TANKERSLEY BROTHERS INDUSTRIES, INC. *v.* CITY OF FAYETTEVILLE.

5-1104                                             296 S. W. 2d 412

Opinion delivered December 17, 1956.

*Hardin, Barton, Hardin* and *Garner; Dickson & Putman,* and *Ray Trammell,* for appellant.

*A. D. McAllister, Jr.,* and *Glen Wing,* for appellee.

J. SEABORN HOLT, Associate Justice. This is a suit by the City of Fayetteville, Arkansas, and two property owners to require the removal of a building constructed under a permit from the City, and to enjoin other uses

of its property by the defendant alleged to be in violation of zoning ordinances.

Defendant, Tankersley Brothers Industries, Inc., is a wholesale distributor of frozen foods with its principal warehouse and place of business at Fort Smith, Arkansas. In September, 1954, it desired to open a place of business in Fayetteville where it purchased a lot described as the South 180 feet of Lot 5, Block 12, A. L. Trent's Revised Plot of the City Park Addition to the City of Fayetteville. The lot was in the "E" Commercial Zone and bounded by College Avenue on the East, Pollard Avenue on the West and Prospect Street on the South. The property on both sides of College Avenue is zoned and used essentially for commercial purposes while the property opposite and across the street from defendant on Pollard and Prospect is in the "C" multiple Family Residence District.

On September 13, 1954, defendant filed its application for a building permit for the erection of a "one-story masonry commercial building" 20 ft. x 20 ft. to be located on its lot at 818 Pollard Avenue. The application provided that all work and building set-backs would conform to the ordinances of the City. There was attached to the application a plot plan of the proposed building showing a 10-foot set-back of the building from the East line of Pollard Avenue. An application for certificate of occupancy also filed with the application stated it was made for a commercial building located in the "E" Commercial Zone and the First Fire Zone and listed the use to which the premises were to be put as "Office and Cold Storage." A permit duly granted by the City Council was issued September 24, 1954 and construction commenced shortly thereafter was completed early in December 1954, when defendant began business operations.

Defendant's business consisted primarily of the sale, storage and distribution at wholesale of frozen and refrigerated foods to grocery stores, restaurants and other retail establishments in Fayetteville and other cities and

towns in that area. A small amount of sales are made directly to consumers but at wholesale prices. The products are usually transported by truck from defendant's Fort Smith warehouse to the building in question for storage and distribution in two trucks maintained by defendant at the Fayetteville place of business. The building consisted of a small office and a storage room 12 ft. x 20 ft. in which refrigeration equipment was installed. It was constructed to face Pollard Avenue with the West wall about 5 ft. from the street and a concrete platform or dock 5 ft. x 20 ft. and 1 ft. high running from the front of the building to the street line.

The plaintiffs, Glen Wing and Dr. Fount Richardson, maintain their homes across the street from defendant's lot, with the Wing residence on Pollard Avenue facing the Northwest corner of defendant's lot and Dr. Richardson's residence facing Prospect, but set back a considerable distance from the street. Shortly after defendant commenced operations, they complained to the City Building Inspector about trucks parking in the street and obstructing traffic in the area. On December 10, 1954, the City Inspector wrote a letter to defendant informing it of the complaints and the fact that a zoning ordinance required off-street parking and loading areas and requested immediate compliance with the ordinance. Defendant immediately constructed a driveway from Pollard Avenue on its lot north of its building and between said building and a small rock residence located on the north portion of its lot.

There were further complaints made to the City Inspector about the continued parking of trucks in Pollard Avenue and defendant's use of the concrete dock adjacent thereto in loading and unloading its products. However, no further complaints were made to defendant until April 11, 1955, when the City Attorney wrote defendant that he had reviewed city building and zoning ordinances at the request of interested property owners and wished to advise defendant of its apparent violations of said ordinances in five particulars: (1) conduct-

ing a business not authorized for "E" Commercial District; (2) failing to provide off-street parking and loading facilities; (3) failing to set back the front wall of the building 10 feet from the street; (4) building the concrete dock in violation of the permit; and (5) failing to front the building on College Avenue instead of Pollard Avenue. The letter also suggested that defendant contact the City Inspector regarding an immediate compliance with applicable ordinances otherwise appropriate legal action would be taken.

On April 27, 1955 the City and the two individual property owners filed the instant suit asserting in substance the alleged violations mentioned in the City Attorney's letter, and that the operation of the business constituted a public and private nuisance. They prayed for a mandatory injunction to remove the building or that defendant be enjoined from the present use of its property and from using the concrete dock adjacent to Pollard Avenue. The defendant admitted application for and issuance of the permit and construction of the building under supervision of the city's agents but denied other material allegations of the complaint. It also alleged that its place of business being upon College Avenue was in fact in a business area regardless of zoning ordinances; that the City had full knowledge of the use to which the building was to be put when it issued the permit and plaintiffs should be estopped to question either the manner of construction or use of the building. Trial resulted in a decree denying the prayer for removal of the building but enjoining defendant from operating its wholesale business therein and requiring that off-street loading facilities be provided and used. It was also decreed that defendant front its building upon and conduct operations from the College Avenue side of the building but using Pollard Avenue for ingress and egress in carrying out said operations. Defendant has appealed, and plaintiffs have cross-appealed from that portion of the decree denying a mandatory injunction for removal or relocation of said building.

Defendant paid $7,500 for the lot in question and spent $6,000 in the construction of the building. The construction was observed by the City Inspector who approved the 5 ft. set-back line, because such construction was permissible under the First Fire Zone ordinance which he understood took precedence over the regular zoning ordinance, and counsel for plaintiffs was of the same view at the trial. Plaintiffs stood by without making any further complaint to defendant and without making any complaint relative to the character of business being conducted for four months after defendant commenced operation of its wholesale business.

We have concluded that the trial court was correct in denying appellee's prayer for removal of the building but was in error in limiting appellant's operations to the College Avenue side of the building, and, also was in error in denying appellant the right to operate its wholesale business. Appellant applied for and was granted a permit by the City to erect this small building for commercial purposes in a commercial zone, and proceeded to construct such building at a cost of some $6,000, under the supervision of the city's agents. We find no evidence of any fraud on the part of appellant. It was permitted to operate a wholesale business for more than 4 months after the building was completed without complaint by the City. We hold that the City has stood by too long and is now equitably estopped to have the building removed or to deny appellant the right to operate wholesale. As indicated, while the trial court confined appellant's operations to the College Avenue side, it, however, allowed appellant access to the building over Pollard Avenue. We hold, in the circumstances, that appellant, in addition to the privilege to operate on College Avenue, should also be permitted to operate its business in the ample space immediately north of its building, and to this end should be permitted to construct on its driveway north of the building a platform or loading dock. With this right, in addition to the loading and unloading privileges allowed on the College Avenue side, we think that it would make no material differ-

ence whether appellant operated retail or wholesale. It seems obvious to us that there would be even less congestion operating wholesale than there would be operating retail.

The rule which we hold applicable here is stated by the text writer in 58 American Jurisprudence, § 184, p. 1040: "On the other hand, there are cases in which a municipality has been regarded as equitably estopped from revoking a building permit. Indeed, where the permit is properly obtained, the weight of authority is that it may not be revoked arbitrarily, particularly where, on the faith of it, the owner has incurred material expense. Hence, there are a number of cases in which the revocation of a permit on the ground of the violation of a zoning regulation has been regarded as improper. This result has been reached where, in good faith, and in reliance on the permit, money has been expended and substantial steps have been taken, such as the purchase of real estate, the execution of contracts for the purchase of land or other property or for other purposes, the employment of an architect or surveyor, the demolition of buildings, the excavation of land, and the installation of equipment." Also in 43 Corpus Juris, § 380 p. 349: "As a general rule, a building permit has none of the elements of a contract and may be changed or entirely revoked, even though based on a valuable consideration, if it becomes necessary so to change or revoke it in the exercise of the police power. Applicant's property is not exempt from the operation of subsequent ordinances and regulations legally enacted by the corporation, as for instance, his property may be subject to an ordinance or regulation extending the fire limits. But when once the proper authorities grant a permit for the erection or alteration of a structure, after applicant has made contracts and incurred liabilities thereon, he acquires a kind of property right on which he is entitled to protection; and under such circumstances it is generally held that the permit cannot be revoked without cause or in the absence of any public necessity for such action . . ." See 62 C. J. S. § 227, p. 521.

The decree, therefore, is modified so as to permit appellant to operate wholesale and to construct a loading and unloading platform immediately north of its building, and as so modified is affirmed.

Justices McFADDIN and Millwee dissent as to modification.